## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

| | |
|---|---|
| SUPERIOR INDUSTRIES, INC.,<br>a Minnesota corporation,<br><br>     Plaintiff,<br><br>     v.<br><br><br><br><br><br>PRECISION, INC.,<br>an Iowa corporation,<br><br>     Defendant. | Civil Action No. 4:21-cv-00224-RGE-SBJ<br><br>**DEFENDANT PRECISION, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED R. CIV. P. 11**<br><br>**ORAL ARGUMENT REQUESTED** |

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................. 1

LEGAL BACKGROUND .................................................................................... 3

I.    Relevant Legal Framework Regarding Rule 11 and Infringement
Claims.................................................................................................. 3

A.    A Patentee Must Compare the Construed Claims to the Accused Product .......... 3

B.    A Patentee Must Continually Re-assess its Claims, Especially after Claim
Construction ...................................................................................................... 4

C.    Courts Frequently Sanction Patentees for Continuing to Pursue Baseless
Claims ................................................................................................................ 5

FACTUAL BACKGROUND ............................................................................... 6

I.    Superior's Infringement Contentions ................................................ 6

A.    Superior's First Infringement Argument – "The Midpoint Not in the
Middle Theory"................................................................................................. 7

B.    Superior's Alternative Infringement Argument – "The Multiple Midpoints
Theory" .............................................................................................................. 8

C.    Superior's Doctrine of Equivalents Admission ................................................ 8

II.    Claim Construction.............................................................................. 9

III.    Superior's Refusal to Relent on its Infringement Assertions........................ 10

ARGUMENT ....................................................................................................... 11

I.    Superior Is Pursuing Objectively Baseless Literal Infringement
Theories.............................................................................................. 11

II.    Superior is Pursuing Objectively Baseless Doctrine of Equivalents
Theories.............................................................................................. 14

III.    Superior Should End the Litigation or Appeal the Court's Claim
Constructions..................................................................................... 16

IV.    The Court Should Award Precision its Fees and Costs as Prescribed
by Rule 11 ......................................................................................... 18

**INTRODUCTION**

Superior and its counsel are in violation of Rule 11 because they continue to pursue patent infringement claims that are objectively baseless in view of the Court's claim constructions.

In briefing and at the claim construction hearing, the parties vigorously disputed the proper interpretation for the related terms "wing," "V-shaped wing," and "midpoint." These terms were hotly contested because, collectively, they appear in every asserted claim and because the parties recognized early on that construction of these terms had the potential to dispose of this case.

On December 1, 2022, the Court issued a claim construction order that construed these important disputed terms. ECF No. 82. The Court found, as a matter of law, that the terms "wing" and "V-shaped wing" are synonyms, they refer to a "<u>singular</u>" wing consisting of first and second wing portions, and there is "<u>a precise location</u> to which the wings extend and <u>at which they converge</u>"—namely, the "midpoint" of the wing. *Id.* at 22 (emphases added).

The Court also defined the "precise location" of this midpoint using "two dimensions of coordinates." *Id.* at 39-41. The first defined coordinate is "halfway across the 'imaginary line' extending across the length of the wing," and the second is "forward of that line in the direction of the pulley's rotation." *Id.*

Collectively, the Court's constructions require a pulley having (1) ***singular*** wings with (2) first and second wing portions that ***extend to and converge at a precise location*** that is (3) ***halfway across an imaginary line between the outer ends of the wing*** and ***forward of that line*** in the direction of the pulley's rotation. *See id.* at 20-22, 39-41.

Precision's accused Herringbone Wing Pulleys ("HBW Pulleys") obviously do not satisfy these requirements. It is undisputed that HBW Pulleys use an alternative "herringbone" design that lacks wing portions that converge at "a precise location," and certainly not at the precise midpoint location defined by the two coordinates articulated in the Court's claim construction

order.  *See id.*  Indeed, unlike the "singular" wings required by the Court's order, the blades on each side of Precision's products are staggered so they *never converge at all*.  These material distinctions are obvious, as seen in the figures below contrasting the singular, convergent wings of Superior's claimed design with the alternating, asymmetrical blades of Precision's distinctive HBW Pulleys:

**SUPERIOR'S DESIGN**     **PRECISION'S DESIGN**



Given the Court's claim construction and the undisputed configuration of Precision's HBW Pulleys, Superior has no reasonable basis to continue to press its patent infringement claims.

Shortly after the Court issued the claim construction order, Precision's counsel identified the fatal flaws in Superior's case and sought confirmation that Superior would consent to entry of a judgment of non-infringement, based on the Court's order.[1]  Superior refused Precision's request, choosing instead to subject Precision to unnecessary, vexatious litigation and further disruption of its business and customer relationships.  Pursuant to Local Rule 7(k), the parties conferred

---

[1] As discussed in detail *infra*, when claim construction resolves the question of infringement in one party's favor, it is appropriate for the parties to agree to entry of judgment so that the case may proceed to appeal.  *See infra* Sec. III; *see also, e.g., Wi-LAN Inc. v. Sharp Elecs. Corp.*, No. 1:15-cv-379, 2019 WL 4344158, at *3 (D. Del. Sept. 12, 2019) ("[C]ourts have often permitted a party to consent to final judgment to allow for expeditious appeals of claim construction orders and to conserve party and court resources.") (collecting cases).

regarding the subject of this motion and Superior indicated that it opposed this motion. Precision now seeks an order from the Court sanctioning Superior under Rule 11 for continuing to pursue its objectively baseless infringement claims. Pursuant to Local Rule 7(c) Precision requests oral argument on this motion.

## LEGAL BACKGROUND

### I.     Relevant Legal Framework Regarding Rule 11 and Infringement Claims

"Rule 11 requires that an attorney conduct a reasonable inquiry of the factual and legal basis for a claim before filing." *Coonts v. Potts*, 316 F.3d 745, 753 (8th Cir. 2003) (citations omitted). Rule 11 applies beyond the filing of a complaint and subjects a litigant to sanctions "for insisting upon a position after it is no longer tenable." *See* Fed. R. Civ. P. 11 advisory committee notes (1993 amendment); *see also, e.g., Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 342 (N.D. Iowa 2007) ("The duty of a party to assess the viability of a claim is not measured solely at the time that the claim was filed, but is a continuing one."). In resolving a Rule 11 motion, the district court inquires "whether a reasonable and competent attorney would believe in the merit of an argument." *Miller v. Bittner*, 985 F.2d 935, 939 (8th Cir. 1993) (quotation omitted); *see also Ideal Instruments*, 243 F.R.D. at 334 ("The standard for imposition of Rule 11 sanctions is generally that the conduct of the party or its counsel was 'objectively unreasonable.'") (citations omitted).

### A.   A Patentee Must Compare the Construed Claims to the Accused Product

"In patent lawsuits, 'defending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates.'" *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 F.3d 1291, 1298 (Fed. Cir. 2014) (quoting *View Eng'g, Inc. v. Robotic Vision Sys.,* 208 F.3d 981, 986 (Fed. Cir. 2000)). Rule 11 requires a pre-suit infringement investigation in which an attorney (1) construes the patent claims, and (2) compares the patent

claims to the accused product. *See Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004) (Rule 11 requires "that an attorney interpret the asserted patent claims and compare the accused device with those claims before filing a claim alleging infringement.").  It is a violation of Rule 11 to pursue infringement claims that are objectively unreasonable under relevant legal authority. *See Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1368 (Fed. Cir. 2012).

## B.    A Patentee Must Continually Re-assess its Claims, Especially after Claim Construction

After the court has construed the asserted claims, the patentee must re-assess its infringement contentions in view of the court's constructions.[2]  *See Taurus IP, LLC v. DaimlerChrysler Corp.*, 726 F.3d 1306, 1328 (Fed. Cir. 2013) (instructing that a patentee "must continually assess the soundness of pending infringement claims, especially after an adverse claim construction"); *Cf. Imprenta Servs., Inc. v. Karll*, No. 2:20-cv-6177, 2022 WL 2784418, at *4 (C.D. Cal. July 5, 2022) ("Where key allegations in the Complaint were objectively baseless and without evidentiary support, Plaintiffs subjected Defendants to such undue costs here. ***This is especially true where Plaintiffs continued to assert the same baseless arguments even after claim construction***.") (awarding fees under Rule 11) (emphasis added).  Rule 11 requires the patentee to abandon its infringement claims if the court's claim constructions render them baseless. *See, e.g., Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1364 (Fed. Cir. 2003) (affirming sanctions under Rule 11 where plaintiff continued to pursue infringement claims after claim construction made clear claims were no longer tenable).

---

[2] "Claim construction is a matter of law, so that an attorney's proposed claim construction is subject to Rule 11(b)(2)'s requirement that all legal arguments be nonfrivolous." *Raylon*, 700 F.3d at 1368.  After the Court has construed the claims, the Court's constructions govern as a matter of law. *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1321 (Fed. Cir. 2009).

C. <u>Courts Frequently Sanction Patentees for Continuing to Pursue Baseless Claims</u>

Courts have frequently sanctioned patentees under 35 U.S.C. § 285[3] for continuing to press infringement claims that were rendered objectively baseless by the court's claim construction. *See, e.g., Innovation Scis., LLC v. Amazon.com, Inc.,* 842 F. App'x 555, 557 (Fed. Cir. 2021) ("We have also frequently held that a case is exceptional when a party continues to litigate claims that have become baseless in view of a district court's claim construction opinion.") (citations omitted); *AdjustaCam, LLC v. Newegg, Inc*., 861 F.3d 1353, 1360 (Fed. Cir. 2017) (holding a case exceptional where the plaintiff's infringement suit "became baseless after the district court's *Markman* order"); *Clinicomp Int'l, Inc. v. Cerner Corp.*, No. 3:17-cv-02479, 2023 WL 1767008, at *10 (S.D. Cal. Feb. 3, 2023) (awarding fees under § 285 where the patentee "pursued a claim for patent infringement that became objectively baseless following the Court's issuance of the claim construction order"); *Princeton Digital Image Corp. v. Ubisoft Ent. SA*, No. 1:13-cv-335, 2021 WL 4033220, at *5 (D. Del. Sept. 3, 2021) (awarding fees under § 285 where patentee continued to press infringement claims based on claim scope the court had found subject to disclaimer); *In re PersonalWeb Techs., LLC et al., Pat. Litig.*, No. 5:18-md-02834, 2020 WL 5910080, at *13 (N.D. Cal. Oct. 6, 2020) (awarding fees under § 285 where the patentee continued to pursue infringement theories that contradicted the court's claim constructions); *Intex Recreation Corp. v. Team Worldwide Corp.*, 77 F. Supp. 3d 212, 217 (D.D.C. 2015) (awarding fees under

---

[3] Precision cites cases applying 35 U.S.C. § 285 as instructive, where courts found that patentees' claims were objectively baseless and/or the courts sanctioned the patentees for continuing to assert baseless infringement claims after claim construction. Courts apply the same objective standard when assessing the appropriateness of sanctions under Rule 11. *See, e.g., Ideal Instruments*, 243 F.R.D. at 334.

§ 285 where the court's "claim construction foreclosed any reasonable argument [of infringement]" but plaintiff refused to stipulate to non-infringement).

## FACTUAL BACKGROUND

Superior and Precision are direct competitors in the market for conveyor belt pulleys. In July of 2021, Superior filed the present lawsuit against Precision, accusing it of selling products that infringe a variety of claims from two related patents directed to a specific configuration of conveyor belt pulley. Each of the claims Superior asserts in this case contains a limitation that requires the presence of a "wing" or a "V-shaped wing."

### I.    Superior's Infringement Contentions

On November 5, 2021, pursuant to the Court's scheduling order, Superior served Precision with a set of infringement contentions.[4]  In those contentions, Superior asserted that Precision's accused products satisfy the "wing" and "V-shaped wing" limitations of the asserted claims in two alternative ways, each of which is discussed below.

---

[4] It is worth noting that throughout this litigation Superior has endeavored to avoid disclosing to Precision a clear and detailed articulation of its infringement positions. For example, early in the case Superior attempted to avoid serving any infringement contentions by refusing to include a deadline for those contentions in the Parties' joint proposed scheduling order. Magistrate Judge Jackson ultimately agreed with Precision and required Superior to serve contentions—the contentions now cited in this motion to demonstrate the baselessness of Superior's infringement case. More recently, on February 23, 2023, Superior filed a motion seeking to serve amended contentions. But, as described more fully in Precision's responsive brief in opposition to that motion (ECF No. 101), Superior's infringement contentions are fatally unclear and—by Superior's own admission—incomplete. Before Superior filed its motion to amend, Precision sought multiple times and in writing for Superior to clarify its positions on infringement, particularly relating to the important "wing," "V-shaped wing," and "midpoint terms" now at issue. Despite Precision's requests, Superior flatly refused to provide a clear articulation of its infringement allegations relating to those terms. The reason for Superior's refusal is straightforward: there is no meritorious allegation to present. *See* ECF No. 101 at 8-9.

A.  <u>Superior's First Infringement Argument – "The Midpoint Not in the Middle Theory"</u>

Under its first argument, Superior randomly selected alternating blades from the left and right side of Precision's accused pulleys, characterized them as first and second wing portions, and collectively labeled them a "wing."[5]  To show that these alleged wing portions "extend toward the midpoint" of the wing, Superior places an "X" on the pulley where the two blades would arguably intersect if they converged (which they do not).  The final result of this exercise is the identification of an alleged "midpoint" that is located somewhere other than the middle of the pulley:

**First Wing Portion**                    **Second Wing Portion**

 

*See* ECF No. 100-3 at 269, 273 (white circles added).

Superior was forced to place the alleged "midpoint" of the wing somewhere other than halfway across the pulley because, unlike Superior's patented design, the blades on either side of Precision's accused products do not form a single symmetrical wing that runs the length of the pulley—instead they are evenly spaced in alternating staggered fashion around the pulley.

---

[5] Superior's attempt to characterize any left and right blade from Precision's accused pulleys as a "wing" is purely arbitrary.  Precision's blades alternate at even intervals around the pulley.  No given blade on the left side of the pulley is more or less affiliated with any other blade located on the right side of the pulley.  It is baseless for Superior to argue that any two of these evenly distributed blades constitute first and second wing portions that converge at a midpoint to form a "singular wing" as the Court's claim construction expressly requires.  ECF No. 82 at 23 (construing "V-shaped wing" as "a singular wing pulley wing comprising a first wing portion and a second wing portion, where the first wing portion and the second wing portion extend toward and converge at a midpoint, forming a V-like shape").

B.  Superior's Alternative Infringement Argument – "The Multiple Midpoints Theory"

Recognizing the weaknesses inherent in its first infringement argument, Superior also advanced an alternate infringement theory in its contentions.  This time, Superior attempted to identify a midpoint located halfway across the length of Precision's pulley.  But to meet this requirement, Superior was forced to identify *two separate midpoints for each wing*—one midpoint for each of the two blades that Superior contends comprise the wing:



*See id.* at 277 (white circles added).

Superior had no choice but to designate two midpoints[6] because, again, unlike Superior's patented design, Precision's pulleys incorporate alternating blades that are asymmetrical and evenly spaced around the pulley.  As a result, each blade crosses the halfway point of the pulley at a different location.

C.  Superior's Doctrine of Equivalents Admission

Both of the infringement arguments that Superior advanced in its infringement contentions contained a potentially fatal flaw.  Its first theory would fail if the Court construed the claims to

---

[6] It is important to note that the plain language of the claims expressly forecloses this infringement theory.  The claims require that the first and second wing portions extend to the same midpoint. *See, e.g.*, ECF No. 1-1 (the '145 patent) at Claim 26 ("the first wing portion extending [] towards *__a__* midpoint … the second wing portion extending [] towards *__the__* midpoint") (emphasis added).

require a midpoint *__located halfway across the length of the pulley__*, and its second theory would fail if the Court required the first and second wing portions to extend toward a *__single__* midpoint.

Superior recognized that if the Court interpreted the claims to include *both* of the foregoing requirements, its entire literal infringement case would fail.[7]   Superior conceded this in its contentions, explaining that if the Court required both wing portions to extend toward a single midpoint located halfway across the pulley, it would no longer have a literal infringement claim and would be forced to argue infringement under the doctrine of equivalents:

> As explained above, the claim language does not require that the first wing portion and the second wing portion extend towards *__a single point located at the exact midpoint of the length of the wing pulley__* forward of an imaginary line that extends between respective outer ends of the first and second wing portions relative to the direction of rotation of the wing pulley. Even if, however, the claim were construed to be so limited, Precision would infringe under the doctrine of equivalents.

ECF No. 100-3 at 253 (emphasis in original, underlining added).

**II.    Claim Construction**

During claim construction, Superior argued for constructions that supported its two infringement theories.   For "midpoint," Superior argued that the term merely required wing portions that extend toward a point "at *__or near__* the center or middle" of the pulley.   ECF No. 47 at 28 (emphasis added).   Superior advocated for this broad and vague interpretation to support the first of its two alternative theories for infringement, namely the "Midpoint not in the Middle" theory.   For the terms "wing" and "V-shaped wing," Superior argued for a construction that did *not* require the first and second wing portions to "converge at a midpoint of the pulley."   *See, e.g.*, ECF No. 65 (Markman hearing transcript) at 43:2-12.  Superior advocated for this construction to

---

[7] As it turns out, this is precisely how the Court later construed the claims in its claim construction order.  ECF No. 82 at 41.

support the second of its two alternative theories for infringement, namely the "Multiple Midpoints" theory.

Unfortunately for Superior, the Court construed the claims as Superior had presaged in the doctrine of equivalents portion of its infringement contentions. Rejecting Superior's broad "at or near the center or middle" construction for the "midpoint" term, the Court characterized the midpoint as "a precise location" and defined it as "*a point* on each wing *halfway across* an imaginary line extending between the outer ends of the wing…." ECF No. 82 at 41 (emphasis added). This construction killed Superior's first infringement argument—the "Midpoint Not in the Middle" theory—which required the flexibility to place the midpoint at a location other than halfway across the length of the pulley.

The Court also held that the first and second wing portions of each wing must extend toward and converge at a *single* midpoint. The Court construed "wing" and "V-shaped wing" as "a *singular* wing pulley wing comprising a first wing portion and a second wing portion, *where the first wing portion and the second wing portion extend toward and converge at a midpoint*, forming a V-like shape." *Id.* at 23. The Court adopted this construction based, at least in part, on statements Superior made to the Patent Office regarding the scope of its invention: "[u]se of the word 'to' indicates there is *a precise location* to which the wings extend and *at which they converge*;" "the intrinsic evidence indicates Superior has consistently claimed wings of a pulley extending toward and converging at a midpoint." *Id.* at 22-23.

The Court's construction killed Superior's second infringement argument—the "Multiple Midpoint" theory—because Superior could no longer designate two different midpoints for the first and second wing portions of a single wing.

**III.    Superior's Refusal to Relent on its Infringement Assertions**

After receiving the Court's claim construction order, Precision approached Superior to request confirmation that Superior would concede non-infringement.  *See* Ex. 1 (Jan. 12, 2023 Letter to Superior Counsel) at 4 ("Based on the Court's claim construction order, the only appropriate course of action is to jointly move the Court for entry of an order declaring no infringement of the asserted claims.").

Conceding infringement was Superior's only viable option after the Court issued its claim construction.  Superior could not maintain its literal infringement case because both of its infringement theories were fatally undermined by the Court's claim constructions.  Superior was also unable to advance its doctrine of equivalents theory because the Court's claim construction for "wing" and "V-shaped wing" was based on a prosecution disclaimer.[8]

Precision served Superior with a copy of this Motion on April 17, 2023.  *See* Ex. 2 (Apr. 17, 2023 Letter to Superior Counsel).  Superior refused to concede infringement and is instead pressing forward with its baseless infringement claims, thereby subjecting Precision to unnecessary litigation costs and continued disruption of its business and customer relationships. *See* Ex. 3. (May 5, 2023 Resp. from Superior Counsel).

## ARGUMENT

### I.    Superior Is Pursuing Objectively Baseless Literal Infringement Theories

The Court's claim constructions established that Superior's infringement contentions regarding "wing," "V-shaped wing," and "midpoint" are objectively baseless.  As a result, no reasonable and competent attorney would believe in the continued merit of those claims and continuing to pursue them is sanctionable.  *See, e.g., Miller*, 985 F.2d at 939.

---

[8] As discussed further *infra*, a party may not rely on the doctrine of equivalents to recapture through the doctrine of equivalents that which it earlier disclaimed during prosecution before the Patent Office.

All of the asserted patent claims require either a "wing" or a "V-shaped wing." As explained in detail *supra*, the Court construed these terms to require "a singular wing pulley wing comprising a first wing portion and a second wing portion, where the first wing portion and the second wing portion extend toward and converge at a midpoint, forming a V-like shape." ECF No. 82 at 23. The Court also defined "midpoint" as "a point on each wing halfway across an imaginary line extending between the outer ends of the wing and forward of that line in the direction of the pulley's rotation." *Id.* at 41.

These constructions establish two key requirements that must be met simultaneously: (1) the first and second wing portions must extend toward and ***converge at a single midpoint*** and (2) that midpoint must be positioned at a ***precise location*** that is ***halfway across an imaginary line extending between the outer ends of the wing*** and forward of that line in the direction of the pulley's rotation. *See id.* at 22-23, 38-41.

Superior cannot present a cohesive infringement theory that comports with the Court's claim construction. Superior proposed two alternative infringement theories for the "wing," "V-shaped wing," and "midpoint" terms precisely because Superior cannot articulate a valid unified infringement theory that meets both of the foregoing key claim requirements at the same time.

Superior's *first* infringement theory alleges that Precision's accused products meet the *first* key requirement by identifying wing portions that extend toward a single midpoint[9], but that first theory fails because it does not satisfy the *second* key requirement—that the ***midpoint be located halfway across the pulley***:

---

[9] Precision contends that even under this first theory, Superior cannot show two wing portions that "extend toward ***and converge at a midpoint***" as the Court's construction requires. The blades of Precision's accused pulleys do not "converge at" a midpoint because the two blades never come remotely close to intersecting—this is yet another reason Superior's allegations lack any objective basis.

**First Wing Portion**          **Second Wing Portion**

 

Point of alleged convergence not halfway
across pulley, as claim construction requires.

Conversely, Superior's *second* infringement theory alleges that Precision's accused products meet the *second* key requirement by pointing to two different midpoints that are each located halfway across the pulley, but that *second* theory fails because it does not satisfy the *first* key requirement—that there be a ***single*** midpoint to which the first and second wing portions extend and ***at which they converge***:

Alleged wing portions do not extend toward and converge at a single midpoint.



This claim limitation "whack-a-mole" problem fatally plagues Superior's infringement case and renders its continued pursuit of this case objectively baseless.

Superior cannot reasonably dispute the fact that its literal infringement case lacks merit. As discussed in the Factual Background above, Superior admitted its literal infringement case

would be dead under the Court's claim constructions.  Superior anticipated that the Court might issue a claim construction order that required "the first wing portion and the second wing portion [to] extend towards a single point located at the exact midpoint of the length of the wing pulley." *See, e.g.,* ECF No. 100-3 at 277.  Superior admitted that such a construction would destroy its literal infringement case—forcing Superior to rely instead on the doctrine of equivalents to argue infringement.  *See id.* ("Even if, however, the claim were construed to be so limited, Precision would infringe under the doctrine of equivalents.").

As it turns out, the Court construed the asserted claims precisely as Superior predicted, and Superior has no objective basis to advance allegations of literal infringement against Precision. Despite admitting that it would be unable to maintain its literal infringement claims in this circumstance, Superior now stubbornly, and baselessly, continues to assert that Precision literally infringes its asserted claims.

## II.    Superior is Pursuing Objectively Baseless Doctrine of Equivalents Theories

Superior's infringement theory under the doctrine of equivalents is also objectively baseless in view of the Court's claim construction order.

Superior asserts that a pulley having first and second wing portions that extend toward ***two different midpoints*** is equivalent to first and second wing portions that extend toward ***the same midpoint***.[10]  In other words, Superior wants to expand the scope of its claims to encompass pulleys that incorporate wings whose first and second wing portions do not extend toward and converge at a precise location, *i.e.*, a midpoint.

---

[10] *See, e.g.,* ECF No. 100-3 at 84 (asserting that "having the first wing portion and the second wing portion extend towards ***a single point***…" is equivalent to "having the first wing portion and the second wing portion extend toward ***slightly offset points***….") (emphasis added).

This is a classic case of a patentee trying to recapture subject matter with the doctrine of equivalents that it unambiguously disclaimed during prosecution. "Prosecution history estoppel applies as part of an infringement analysis to prevent a patentee from using the doctrine of equivalents to recapture subject matter surrendered from the literal scope of a claim during prosecution." *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1159 (Fed. Cir. 2019).

In its claim construction order, the Court found that Superior distinguished its invention from the prior art by explaining that "there is a precise location to which the wings extend and at which they converge." ECF No. 82 at 22 ("Use of the word 'to' indicates ***there is a precise location to which the wings extend and at which they converge***.") (emphasis added). Superior cannot sidestep that finding by invoking the doctrine of equivalents to broaden its claims to read on pulleys whose first and second wing portions do ***not*** extend to and converge at a midpoint.

Well-established Federal Circuit law forbids Superior from trying to use the doctrine of equivalents to recapture claim scope. *See Amgen Inc.*, 931 F.3d at 1159; *Andersen Corp.*, 474 F.3d at 1374; *see also SciMed Life Systems, Inc. v. Advanced Cardiovascular Systems, Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) ("because the scope of the claim was limited in a way that plainly and necessarily excluded a structural feature that was the opposite of the one recited in the claim, that different structure could not be brought within the scope of patent protection through the doctrine of equivalents.").

Superior's refusal to adhere to this clear legal authority warrants sanctions. *See, e.g., CliniComp Int'l,* 2023 WL 1767008, at *10 (awarding fees under § 285 where patentee pursued infringement claims that became objectively baseless after the Court applied a prosecution disclaimer to the claim scope); *Straight Path IP Grp., Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026, 1032-34 (N.D. Cal. 2019) (infringement claims were "objectively baseless" where patentee

"sought to escape the consequences of its own representations—*i.e.*, a narrow infringement theory—in the instant actions"); *Traxcell Techs., LLC. v. AT&T Corp.*, No. 2:17-cv-00718, 2022 WL 949951, at *4-*5 (E.D. Tex. Mar. 29, 2022) (infringement theories "objectively baseless" where, *inter alia*, patentee tried to assert a doctrine of equivalents argument to capture claim scope the court had found subject to a disclaimer); *Princeton Digital Image Corp.*, 2021 WL 4033220, at *3 ("[T]he Court agrees with [defendant] that [patentee's] suit became baseless after the Court, in its claim construction order, applied [patentee's] disclaimer to the asserted claims of the '129 patent.").

Simply put, there is no evidence or non-frivolous argument that Precision's accused pulleys meet the "wing," "V-shaped wing," and "midpoint" limitations of the asserted claims in view of the Court's claim constructions. Accordingly, Superior cannot, in good faith, maintain its infringement claims against Precision.

### III.   Superior Should End the Litigation or Appeal the Court's Claim Constructions

The Court's constructions disposed of Superior's infringement claims. "So, after the court issued its *Markman* order, [Superior] should have conceded that its infringement claims failed as a matter of law and either ended the litigation or appealed on the ground that the court's *Markman* ruling was erroneous." *Upaid Sys., Ltd. v. Card Concepts, Inc.*, No. 1:17-cv-8150, 2022 WL 4482762, at *3 (N.D. Ill. Sept. 27, 2022) (awarding fees under § 285). This is a well-established course of action for a reasonable patentee whose claims are revealed to be baseless under a court's claim constructions. *See, e.g., Sarif Biomedical LLC v. Brainlab, Inc.*, 725 F. App'x 996, 997 (Fed. Cir. 2018) (affirming the denial of the defendant's motion for fees where, "[f]ollowing an order on claim construction adverse to [the plaintiff], the parties jointly stipulated to final judgment of invalidity and noninfringement") (citations omitted); *Innovation Scis.*, 842 F. App'x at 556

("After claim construction, Innovation stipulated to noninfringement of the asserted claims of the '844 patent. . . ."); *Agarwal v. Morbarck, LLC*, No. 1:20-cv-12150, 2021 WL 5999255, *1 (E.D. Mich. 2021) (patentee requested judgment of non-infringement under district court's claim construction in order to appeal claim construction to the Federal Circuit); *Capital Machine Co., Inc. v. Miller Veneers, Inc*., No. 1:09-cv-702, 2013 WL 6560917, *4-*6 (S.D. Ind. 2013) (same).

On the other hand, courts routinely sanction patentees who refuse to concede non-infringement after claim construction disposes of their infringement claims. *See, e.g., M2M Sol's. LLC v. Sierra Wireless Am., Inc*., No. 1:14-cv-1102, 2022 WL 336554, at *2 (D. Del. Jan. 3, 2022) ("Plaintiffs had the option of stipulating to non-infringement and appealing the adverse claim construction. Alternately, Plaintiffs could have dropped the case. Instead, Plaintiffs unreasonably prolonged litigation by asserting an infringement position that was contrary to the claim construction.") (awarding fees under § 285); *Upaid*, 2022 WL 4482762 at *3; *Intex*, 77 F. Supp. 3d at 217 (awarding fees under § 285 where "TWW refused Intex's proposal to stipulate to non-infringement, while preserving its appeal rights, and instead persisted towards summary judgment.").

Superior knows very well that this is the responsible course of action—in fact, this is **exactly** what Superior did, *when represented by different counsel*, in a previous patent infringement case where the court's claim constructions disposed of Superior's infringement claims. *See Superior Indus., LLC v. Masaba, Inc.,* No. 0:10-cv-764, 2017 WL 4075161, at *1 (D. Minn. Sept. 13, 2017) ("Based on these constructions, Superior conceded that it could not prove infringement and filed a motion seeking entry of judgment of non-infringement and dismissal of the invalidity claims … Superior appealed the Markman Order to the Federal Circuit Court of Appeals."). In

the instant case, however, Superior and its different counsel refuse to take this reasonable and necessary course of action.

## IV.    The Court Should Award Precision its Fees and Costs as Prescribed by Rule 11

Unfortunately, Superior insists on forcing the parties and the Court to waste resources litigating baseless infringement claims.  This is "precisely the scenario Rule 11 contemplates." *See Source Vagabond Sys. Ltd*, 753 F.3d at 1298 ("In patent lawsuits, '[d]efending against baseless claims of infringement subjects the alleged infringer to undue costs—precisely the scenario Rule 11 contemplates.'") (citations omitted); *see also* Fed. R. Civ. P. 11 advisory committee notes ¶¶ 5-7 (1993) (Rule 11 "subject[s] litigants to potential sanctions for insisting upon a position after it is no longer tenable.").   Accordingly, the Court should order Superior and its counsel to pay Precision's reasonable attorneys' fees and costs incurred from the date of the Court's claim construction order. If awarded, Precision will file a calculation of fees and costs incurred during the relevant time period. *See* Fed. R. Civ. P. 54(d)(2)(C).

Dated: May 18, 2023

Respectfully submitted,

By: */s/ Richard L. Brophy*
Richard L. Brophy
Mark A. Thomas
Margaret R. Szewczyk
ARMSTRONG TEASDALE LLP
7700 Forsyth Blvd., Suite 1800
St. Louis, Missouri 63105
(314) 621-5070 (telephone)
rbrophy@atllp.com
mathomas@atllp.com
mszewczyk@atllp.com

Brant D. Kahler
BROWN WINICK LAW FIRM
666 Grand Avenue, Suite 2000
Des Moines, IA 50309
(515) 242-2430 (telephone)
brant.kahler@brownwinick.com

**Attorneys for Defendant Precision, Inc.**

## CERTIFICATE OF SERVICE

I certify that on May 18, 2023, I electronically filed the foregoing with the Clerk of Court using the CM/ECF System, which will serve all counsel of record.

*/s/ Helen Mollenbeck*
Helen Mollenbeck, Legal Assistant