IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| SUPERIOR INDUSTRIES, INC., a Minnesota corporation, <br><br> Plaintiff, <br><br> v. <br><br> PRECISION, INC., an Iowa corporation, <br><br> Defendant. | Civil Action No. 4:21-cv-00224-RGE-SBJ <br><br> **PLAINTIFF SUPERIOR INDUSTRIES, INC.'S RESPONSE TO PRECISION, INC.'S MOTION FOR SANCTIONS PURSUANT TO FED R. CIV. P. 11** |

## <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      INTRODUCTION ................................................................................................................ 1

II.     FACTUAL AND PROCEDURAL BACKGROUND....................................................... 3

    A.      Superior's infringement position has been consistent from the outset of the
        case.......................................................................................................................... 3

    B.      After claim construction, the parties disagreed on the import of the Court's
        Claim Construction Order....................................................................................... 5

    C.      Superior moved to amend its infringement contentions following the Court's
        Claim Construction Order....................................................................................... 6

    D.      Superior serves the expert report of Griswold analyzing infringement under
        the asserted claims. ................................................................................................ 7

    E.      Precision files its Rule 11 Motion.......................................................................... 7

III.    LEGAL STANDARD........................................................................................................ 8

IV.     ARGUMENT .................................................................................................................... 9

    A.      Precision's attempt to litigate the merits through a motion under Rule 11 is
        improper and wasteful............................................................................................ 9

    B.      Precision does not show Superior's infringement positions are objectively
        unreasonable—and that is Precision's burden. ......................................................12

        1.      Precision fails to show Superior's assertion of literal infringement is
            objectively unreasonable..............................................................................12

            a.      Precision fails to show Superior's assertion that the accused products
                literally meet the "wing" and "V-shaped wing" limitations in all of the
                asserted claims of the '145 and '600 patents is objectively
                unreasonable. ................................................................................13

            b.      Precision fails to show Superior's assertion that the accused products
                literally meet the "the midpoint" limitation in claims 26 and 29-31 of
                the '145 patent is objectively baseless. ........................................15

        2.      Precision fails to show that Superior's doctrine of equivalent theories are
            objectively unreasonable..............................................................................17

V.      CONCLUSION................................................................................................................ 20

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Agarwal v. Morbarck, LLC,*
   585 F. Supp. 3d 1026 (E.D. Mich. 2021)..............................................................................12

*Amgen Inc. v. Coherus BioSciences Inc.,*
   931 F.3d 1154 (Fed. Cir. 2019)..........................................................................................19

*Bigford v. BESM, Inc.,*
   No. 12-61215-CIV, 2012 WL 12886184 (S.D. Fla. Oct. 12, 2012) ......................................10

*CAE Screenplates, Inc. v. Heinrich Fiedler Gmbh & Co. Kg,*
   224 F.3d 1308 (Fed. Cir. 2000)...........................................................................................13

*Chambers v. NASCO, Inc.,*
   501 U.S. 32, 56 n.19 (1991)...................................................................................................9

*CliniComp Int'l., Inc. v. Cerner Corp.,*
   17-cv-02479-GPC (DEB), 2023 WL 1767008 (S.D. Cal. Feb. 3, 2023)...............................19

*Coonts v. Potts,*
   316 F.3d 745 (8th Cir. 2003) ...............................................................................................11

*Cooter & Gell v. Hartmarx Corp.,*
   496 U.S. 384 (1990).................................................................................................................9

*Cordis Corp. v. Medtronic Ave, Inc.,*
   511 F.3d 1157 (Fed. Cir. 2008).......................................................................................18, 20

*Davis v. Wells Fargo U.S. Bank Nat'l Assoc.,*
   2016 WL 4440342 (E.D. Pa. Aug. 23, 2016) ......................................................................10

*Dome Patent LP v. Permeable Tech., Inc.,*
   190 F.R.D. 88 (W.D.N.Y. 1999).............................................................................................9

*Echols v. Courier Express One, Inc.,*
   No. 4:21CV602 HEA, 2021 WL 5177353 (E.D. Mo. Nov. 8, 2021) ......................................9

*EI du Pont de Nemours & Co. v. Phillips Petro. Co.,*
   849 F. 2d 1430 (Fed. Cir. 1988)...........................................................................................18

*Gonzalez v. Winn-Dixie Stores, Inc.*
   (S.D. Fla. May 6, 2014) .......................................................................................................10

*Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*,
  No. 00 Civ. 1115(LAK), 2000 WL 528633 (S.D.N.Y. May 2, 2000)....................................10

*Health Grades, Inc. v. MDX Med., Inc.*,
  Civil Action No. 11-cv-00520-RM-BNB, 2014 U.S. Dist. LEXIS 200340 (D.
  Colo. Jan. 2, 2014) ...........................................................................................................11

*Ideal Instruments, Inc. v. Rivard Instruments, Inc.*,
  243 F.R.D. 322 (N.D. Iowa 2007) .......................................................................................11

*Intell. Ventures II LLC v. FedEx Corp.*,
  No. 2:16-CV-00980-JRG, 2019 WL 5784171 (E.D. Tex. Mar. 28, 2019)..............................8

*Intervet Inc. v. Merial Ltd.*,
  617 F.3d 1282 (Fed. Cir. 2010).............................................................................................18

*Miller v. Bittner*,
  985 F.2d 935 (8th Cir. 1993) ...............................................................................................11

*Nat'l Ass'n for Advancement of Colored People-Special Contribution Fund v.
  Atkins*,
  908 F.2d 336 (8th Cir. 1990) .................................................................................................8

*In re New Motor Vehicles Canadian Export Antitrust Litigation*,
  244 F.R.D. 70 (D. Me. 2007).................................................................................................10

*Phonometrics, Inc. v. Econ. Inns of Am.*,
  349 F.3d 1356 (Fed. Cir. 2003).............................................................................................12

*Powell v. Home Depot, U.S.A., Inc.*,
  No. 07-80435-CIV, 2009 WL 10664817 (S.D. Fla. July 15, 2009), *report and
  recommendation adopted*, No. 07-80435-CIV, 2009 WL 10664818 (S.D. Fla.
  Aug. 12, 2009) .....................................................................................................................8

*Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*,
  793 F.3d 1177 (10th Cir. 2015) .............................................................................................9

*Princeton Digital Image Corp. v. Ubisoft Entertainment SA*,
  No. 13-335-LPS-CJB, 2021 WL 4033220 (D. Del. Sept. 3, 2021) ........................................19

*Q-Pharma, Inc. v. Andrew Jergens Co.*,
  360 F.3d 1295 (Fed. Cir. 2004).............................................................................................12

*Raylon, LLC v. Complus Data Innovations, Inc.*,
  700 F.3d 1361 (Fed. Cir. 2012).............................................................................................12

*Richmond v. Actavis Totowa, LLC*,
  No. 2:09-cv-00888, 2010 U.S. Dist. LEXIS 35437 (S.D. W. Va. Apr. 8, 2010)....................11

*Safe-Strap Co. v. Koala Corp.*,
  270 F. Supp. 2d 407 (S.D.N.Y. 2003)..............................................................................1, 10

*SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*,
  242 F.3d 1337 (Fed. Cir. 2001)...............................................................................................19

*Scotts Co. LLC v. Liberty Mut. Ins. Co.*,
  No. 2:06-CV-899, 2007 WL 4365709 (S.D. Ohio Dec. 12, 2007)........................................10

*Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*,
  753 1291, 1296 (Fed. Cir. 2014)..............................................................................................11

*Straight Path IP Group, Inc. v. Cisco Sys., Inc.*,
  411 F. Supp. 3d 1026 (N.D. Cal. 2019) ..................................................................................19

*Thorner v. Sony Comput. Entm't Am. Inc.*,
  2010 WL 904797 (D.N.J. Mar. 9, 2010)..................................................................................11

*TIC Park Ctr. 9, LLC v. Cabot*,
  No. 16-24569-CIV, 2018 WL 7286989 (S.D. Fla. Nov. 28, 2018) ........................................10

*Traxcell Techs., LLC v. AT&T Corp.*,
  No. 17-cv-00718-RWS-RSP, 2022 WL 949951 (E.D. Tex. Mar. 29, 2022)..........................19

*View Eng'g, Inc. v. Robotic Vision Sys.*,
  208 F.3d 981 (Fed. Cir. 2000)..................................................................................................11

*Zinner v. Olenych*,
  No. 2:14CV163, 2016 WL 8710973 (E.D. Va. Jan. 22, 2016)..................................................9

**Statutes**

35 U.S.C. § 285...................................................................................................................................12

**Other Authorities**

Fed. R. Civ. P.
  11 ................................................................................................................................ *passim*
  11(b).............................................................................................................................................3
  11(b)(2).........................................................................................................................................8
  11(c)(2).........................................................................................................................................3
  11(c)(3).........................................................................................................................................3

U.S. Patent No.
  D152,754.....................................................................................................................................20
  RE45,145 ............................................................................................................................ *passim*
  RE48,600 ...................................................................................................................................2, 3

# I.   INTRODUCTION

Precision's motion under Rule 11 is an improper attempt to litigate the merits before summary judgment proceedings or trial. This side-stepping tactic is universally rejected by courts, and this Court should do the same and deny Precision's motion.

Up until now, this case between two competitors in the conveyor components industry has progressed like most patent cases. The parties exchanged infringement and validity contentions followed by briefing of competing claim-construction positions. The Court then issued a Claim Construction Order and each party analyzed the Court's Order in light of the infringement and validity issues. As is common, especially where the Court does not select the construction proposed by either party, Superior proposed some amendments to its infringement contentions to conform to the Court's Order.[1] But Precision sought a special schedule to allow for early summary judgment, which the Court denied. Precision later threatened to bring an early summary judgment motion (which it could have done), but then elected to try to litigate the merits under the guise of Rule 11—without the development of a record to support a dispositive ruling.

For the reasons discussed in more detail below, this approach is procedurally improper. Moreover, Precision has not even identified which pleading or other paper filed or submitted by Superior, allegedly violates Rule 11. And yet, Precision's motion asks the Court to (1) issue a non-infringement declaration; (2) dismiss the case; and (3) award costs and fees in the process as a sanction pursuant to Rule 11. "[A] Rule 11 motion for sanctions is not a proper substitute for a motion for summary judgment." *Safe-Strap Co. v. Koala Corp.*, 270 F. Supp. 2d 407, 416 (S.D.N.Y. 2003).

---

[1] Precision did not agree to Superior's proposed amendments and Superior's Motion to Amend is pending before the Court. (D.I. 100.)

Precision's motion also does not meet the exacting standards of Rule 11—not even remotely. Before this motion was served, Superior explained why its claims of infringement were supported in light of the Court's Claim Construction Order. Superior also explained—in detail—why it disagreed with Precision's attempts to impose interpretations on the Claim Construction Order and its import for the case. In particular, Superior pointed out what it believed were two fundamental disagreements with Precision's non-infringement arguments. First, without any express indication that the Court so intended, and contrary to legal authority, Precision incorrectly imported the Court's construction for "the midpoint" claim term found in claims 26, 29, 30, and 31 of the '145 patent into *every* asserted claim of the '145 and '600 patents that contains the term "wing" or "V-shaped wing."

Second, Superior pointed out that contrary to Federal Circuit precedent, Precision broadly interpreted an exchange between the patent examiner and the inventors as precluding *any infringement* under the doctrine of equivalents. Superior raised these points in a February 1, 2023 letter to Precision's counsel. Ex. 3[2]. Superior also served an expert report on these issues, consistent with the Court's Claim Construction Order. Inexplicably, Precision filed this motion without addressing or even acknowledging the existence or content of that correspondence, or Superior's expert report on infringement. Without addressing Superior's positions—despite being fully aware of them— Precision has not shown they are objectively unreasonable.

Accordingly, Superior respectfully requests that this attack on the integrity of Superior and its counsel be denied.[3]

---

[2] Exhibits are attached to the Declaration of Cyrus A. Morton in Support of Superior's Opposition to Precision's Rule 11 Motion, filed concurrently herewith.

[3] Superior reserves its rights under Rule 11(c)(2) to seek an award for its reasonable costs and fees under Rule 11(c)(2) for having to respond to this baseless motion. Under Rule 11(c)(3), the

## II. FACTUAL AND PROCEDURAL BACKGROUND

### A. Superior's infringement position has been consistent from the outset of the case.

This case involves Precision's infringement of patents awarded to Superior for wing pulleys with a novel v-shaped wing design. (D.I. 1.)

The asserted claims of the '145 patent and '600 patent come in two flavors for purposes of this motion: (1) claims that generically recite a "wing" or "V-shaped wing" (*see* '145 patent at cls. 13, 19-20, 25 *and* '600 patent at cls. 26, 27, 29-33, and 35-37); and (2) a smaller number of claims that generically recite a "wing" and further specify a particular "midpoint" toward which wing portions converge (*see* '145 patent cls. 26, 29, 30, and 31). No claims of the '600 patent and no other claims of the '145 patent (other than 29-31) include this language or the term "the midpoint." *See generally* '145 patent and '600 patent.

From the outset of the case, Superior identified in its Complaint exactly where in the accused PPI Herringbone Wing pulley the "wings" or "V-shaped wings" were found:



(*See*, *e.g.*, D.I. 1 at ¶¶ 66, 68-69; *see also id*. at ¶ 48.) Superior's position has not changed throughout the litigation, except for Superior removing the contact bar from the claimed "wing"

---

Court may also on its own initiative order Precision to show cause as to why Precision's Rule 11 motion itself does not violate Rule 11(b).

in its proposed amended infringement contentions. (*Compare* D.I. 1 (Complaint) at ¶¶ 66, 68-69 *and* D.I. 100-3 (Superior Amended Contention cover pleading) at 7-8.)[4]

At claim construction, Precision sought construction of *seventeen terms* across the two asserted patents, to limit the claims to a preferred embodiment.[5] (*See* D.I. 50.) For example, Precision argued that the claimed "wing" or "V-shaped wing" should comprise a single piece of metal. (*Id.* at 1, 6, 8). Precision also argued that the claimed "wing" or "V-shaped wing" should have two portions that *attach* at a midpoint. (*Id.* at 15, 17, 19). Precision further argued that the claimed invention should have "symmetrical" wings. (*See* D.I. 50 at 23.) Precision further moved for what was effectively early summary judgment of invalidity on all but four asserted claims. (*See* D.I. 82 at 32-40.)

The Court did not adopt any of Precision's seventeen proposed constructions and denied Precision's motion for summary judgment of invalidity. (D.I. 82.) The Court construed the terms "wing" and "V-shaped wing" in the same manner as "a singular wing pulley wing comprising a first wing portion and a second wing portion, where the first wing portion and the second wing portion extend toward and converge at a midpoint, forming a V-like shape." (D.I. 82 at 18, 23.) The Court did not limit the claim terms, as Precision requested, to wings that (1) are comprised of a single plate; or (2) that have portions that attach or connect. (*See* D.I. 82 at 19 ("Because these claims do not indicate the wings must be constructed from a single metal plate, the Court does not

---

[4] Precision's defense was never as straightforward and forthcoming. Despite asserting affirmative defenses and counterclaims of non-infringement, Precision initially refused to provide the basis for its non-infringement position. (*See* D.I. 34.) Superior was forced to move to compel Precision to provide a substantive response to Superior's Interrogatory No. 3, providing the basis for its non-infringement position. The Court granted that motion. (D.I. 40; Ex. 1 (2022.02.10 Precision's Supplemental Responses) at 6-19).

[5] Precision appears to be doing this once again as it directly compares the embodiment described in Exhibit 1 to Precision's Herringbone wing pulley. (*See* D.I. 107 at 2.)

adopt Precision's construction of the term 'V-shaped wing' requiring as much."); *id*. at 21 ("The intrinsic evidence, however, *does not* indicate the wing portions must attach at a midpoint. The claims consistently employ the word "extending" to describe the direction in which the wing portions reach—inwards towards a midpoint. ") (emphasis added).)

Separately, the Court construed the term "'*the* midpoint' as used in claims 26, and 29-31 of the ['145 patent]" as "a point on each wing halfway across an imaginary line extending between the outer ends of the wing and forward of that line in the direction of the pulley's rotation." (D.I. 82 at 38-39 (emphasis added).) The Court's construction of "the midpoint" was informed by several specific limitations found in claims 26, and 29-31 of the '145 patent including "the midpoint is oriented forward of an imaginary line that extends between respective outer ends of the first and second wing portions relative to the direction of rotation of the wing pulley." (*Id*. at 41 (citing '145 patent at 6:57-60).) In its analysis of "the midpoint" claim term, the Court did not refer to claims other than claims 26 and 29-31 of the '145 patent. (*See generally* D.I. 82 at 38-41.) Nor did the Court otherwise refer generally to its construction of the generic "wing" and "V-shaped wing" terms. (*Id*.)

**B.     After claim construction, the parties disagreed on the import of the Court's Claim Construction Order.**

After the Court issued its Claim Construction Order on December 1, 2022, counsel for Superior and Precision were to provide a Joint Status Report to the Court outlining, *inter alia*, any outstanding fact discovery issues and a proposed schedule going forward. (D.I. 83.) Precision initially agreed to a typical schedule for completing fact discovery, expert discovery, followed by dispositive motion practice. (D.I. 100-5 at 3, 4.) Then hours before the Joint Status Report was due, on a meet-and-confer with counsel, Precision changed position, claiming that the Court's Claim Construction Order foreclosed any assertion of infringement and that early summary

judgment was now warranted. (*See* D.I. 84 at 3 fn. 4; *id.*) The Court, however, did not adopt Precision's proposal for early summary judgment, but set a deadline of June 22, 2023 for dispositive motions. (*See* D.I. 91.)

At Superior's request, (*see* Ex. 2), Precision, in a letter on January 12, 2023, explained why it believed the accused products could not infringe literally or under the doctrine of equivalents. (*See* D.I. 107-2) Superior responded on February 1, 2023, pointing out a number of counter-arguments to Precision's position including that (1) Precision articulated no basis for importing the Court's construction for "the midpoint" in claims 26, 29-30 of the '145 patent into all the remaining claims; (2) Precision implicitly added additional limitations to the Court's construction of "wing" and "V-shaped wing," including that the midpoint must be in the exact middle of the pulley and that it must constitute a point; (3) Superior's doctrine-of-equivalents theory was not trying to recapture wing pulleys that have abutments like Kanaris with an open space in the middle; and (4) ultimately Precision's arguments were a re-packaging of its prior claim construction arguments that the claimed "wing" and "V-shaped wing" must be comprised of a single metal plate and have portions that attach at a midpoint. Ex. 3 at 2-4. Superior further explained that Precision was raising fact questions appropriate for trial. *Id.* at 4.

### C.   Superior moved to amend its infringement contentions following the Court's Claim Construction Order.

As parties often do following claim construction, Superior sought leave from the Court to amend its contentions to address (1) constructions adopted by the Court that neither party had proposed; and (2) to include a doctrine-of-equivalents argument addressing Precision's non-infringement position as articulated during the parties' December 20 meet-and-confer. (*See* D.I. 100.) Superior had asserted doctrine-of-equivalents theories from the outset of the litigation in both its Complaint and initial infringement contentions. (D.I. 1; 100-3). But during the course of the

parties' meet-and-confer following the claim construction, it became clear that Precision was interpreting the Court's Claim Construction Order of "wing" or "V-shaped wing" differently than Superior. (*See* D.I. 107-2). In view of Precision's positions, Superior thus sought to amend its doctrine-of-equivalents infringement theories for "wing" and "V-shaped wing." (D.I. 100.)

Precision opposed Superior's motion to amend. In its opposition, Precision largely focused its arguments on substantive infringement issues. (*See* D.I. 101 at 7-10.) Superior again explained how Precision's arguments were misplaced and directed at arguments for summary judgment and trial, not a motion to amend contentions. (*See* D.I. 102 at 9 (citing cases).) Superior's motion is still pending.

**D.      Superior serves the expert report of Griswold analyzing infringement under the asserted claims.**

On April 6, 2023, over a month before Precision filed this motion, Superior served on Precision the Opening Expert Report of F. Daniel Griswold. Griswold's report provided additional detailed analysis of how each of the accused products met the "wing" and "V-shaped wing" limitations both literally and under the doctrine of equivalents for each of the asserted claims. Ex. 4 (Griswold Report) ¶¶ 122-51. Griswold's report also detailed how each of the accused products met the "the midpoint" limitations of claims 26, 29-31 of the '145 patent. *Id*. ¶¶ 219-57.

**E.      Precision files its Rule 11 Motion.**

Precision served this motion on April 17, 2023 and then filed the motion on May 18, 2023. The motion ignores much of the history recited above and did not address or even acknowledge (1) Superior's proposed amended contentions; (2) Superior's letter response to Precision on February 1, 2023; (3) the expert infringement report of Griswold; and (4) any of the testimony or documents relevant to infringement in this case.

This matter's deadline for dispositive motions is set for June 22, 2023. (D.I. 91.) As of the filing of this opposition, Precision has yet to move for summary judgment.

## III. <u>LEGAL STANDARD</u>

Rule 11 sanctions are imposed only in response to claims presented in "a pleading, written motion, or other paper" that are not "warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law." Fed. R. Civ. P. 11(b)(2). "[A] Rule 11 violation is a serious thing, and an accusation of such wrongdoing is equally serious." *Intell. Ventures II LLC v. FedEx Corp.*, No. 2:16-CV-00980-JRG, 2019 WL 5784171, at *6 (E.D. Tex. Mar. 28, 2019) (quoting *Draper & Kramer, Inc. v. Baskin-Robbins, Inc.*, 690 F. Supp. 728, 732 (N.D. Ill. 1988).)

"[Rule 11 motions] should not be employed . . . to test the legal sufficiency or efficacy of allegations in the pleadings; other motions are available for those purposes." Notes of the Advisor Committee on Rules – 1993 Amendment. "Nor should Rule 11 motions be prepared to emphasize the merits of a party's position, to exact an unjust settlement, to intimidate an adversary into withdrawing contentions that are fairly debatable, [or] to increase the costs of litigation . . . ." *Id.*; *see also Powell v. Home Depot, U.S.A., Inc.*, No. 07-80435-CIV, 2009 WL 10664817 (S.D. Fla. July 15, 2009), *report and recommendation adopted*, No. 07-80435-CIV, 2009 WL 10664818, at *5 (S.D. Fla. Aug. 12, 2009) ("To the extent that Plaintiff's Motion appears to be nothing more than a repeat of the merits of its Motion for Summary Judgment, it could be argued that Plaintiff's Motion for Sanctions constitutes a waste of judicial resources.")

Courts evaluate alleged Rule 11 violations under the "objective reasonableness standard." *Nat'l Ass'n for Advancement of Colored People-Special Contribution Fund v. Atkins*, 908 F.2d 336, 339 (8th Cir. 1990). "Because our adversary system expects lawyers to zealously represent their clients, this standard is a tough one to satisfy; an attorney can be rather aggressive and still

be reasonable." *Predator Int'l, Inc. v. Gamo Outdoor USA, Inc.*, 793 F.3d 1177, 1182 (10th Cir. 2015) (applying "objective reasonableness" standard in the 10th Circuit). Rule 11 sanctions are only appropriate if the attorney's conduct, "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Echols v. Courier Express One, Inc.*, No. 4:21CV602 HEA, 2021 WL 5177353, at *1 (E.D. Mo. Nov. 8, 2021). Importantly, in assessing whether Rule 11 sanctions should be imposed, a court does not judge the merits of an action. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990). Rather, the court determines "a collateral issue: whether the attorney has abused the judicial process, and, if so, what sanction would be appropriate." *Id.* "The party moving for Rule 11 sanctions has the burden of proving a violation of Rule 11." *Zinner v. Olenych*, No. 2:14CV163, 2016 WL 8710973, at *2 (E.D. Va. Jan. 22, 2016).

## IV.  ARGUMENT

### A.  Precision's attempt to litigate the merits through a motion under Rule 11 is improper and wasteful.

A long line of cases show it is universally accepted that Rule 11 motions are not a substitute for summary judgment, or for other motions on the merits. *See Dome Patent LP v. Permeable Tech., Inc.*, 190 F.R.D. 88, 90 (W.D.N.Y. 1999) ("Rule 11 should not be used to raise issues of legal sufficiency that more properly can be disposed of by a motion to dismiss or a motion for a more definite statement or a motion for summary judgment." (quoting 5A Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure § 1336 at 97 (2d ed. 1990)); *Chambers v. NASCO, Inc.*, 501 U.S. 32, 56 n.19 (1991) ("[I]t is anticipated that in the case of pleadings the sanctions issue[d] under Rule 11 normally will be determined at the end of the litigation, and in the case of motions at the time when the motion is decided or shortly thereafter." (quoting Advisory Committee Notes on 1983 Amendment to Rule 11)). Accordingly, courts have routinely denied

motions for sanctions under Rule 11 when there has been no motion for summary judgment or order on the merits. *See, e.g.*, *TIC Park Ctr. 9, LLC v. Cabot*, No. 16-24569-CIV, 2018 WL 7286989, at *3 (S.D. Fla. Nov. 28, 2018) (denying motion for sanction as premature without prejudice to renewal after disposition of the underlying motion for summary judgment) ("While the Miller Defendants may ultimately be correct in that Plaintiff's conduct warrants Rule 11 sanctions, Plaintiff is entitled to the disposition of the parties' cross motions for summary judgment and a determination on the merits of the claims presented."); *Gonzalez v. Winn-Dixie Stores, Inc.*, (S.D. Fla. May 6, 2014) (same); *Bigford v. BESM, Inc.*, No. 12-61215-CIV, 2012 WL 12886184, at *2 (S.D. Fla. Oct. 12, 2012) (same); *Davis v. Wells Fargo U.S. Bank Nat'l Assoc.*, 2016 WL 4440342, at *4 (E.D. Pa. Aug. 23, 2016) (same); *In re New Motor Vehicles Canadian Export Antitrust Litigation*, 244 F.R.D. 70, 74 (D. Me. 2007) (denying Rule 11 motion without prejudice to its renewal "if and when [Defendant] obtains summary judgment"); *Scotts Co. LLC v. Liberty Mut. Ins. Co.*, No. 2:06-CV-899, 2007 WL 4365709, at *1 (S.D. Ohio Dec. 12, 2007) (finding "an award of sanctions prior to the conclusion of summary judgment proceedings or other determination of the [] claims on the merits would be premature."); *Safe-Strap Co.*, 270 F. Supp. 2d 407, 419 (holding "dismissal of this patent infringement action on the merits via Rule 11 would subject Safe–Strap to prejudice. . . [and] would allow Koala to receive all the benefits of a summary judgment despite the fact that Koala chose to bypass the strictures associated with the summary judgment procedure."); *Hallwood Realty Partners, L.P. v. Gotham Partners, L.P.*, No. 00 Civ. 1115(LAK), 2000 WL 528633, at *1 (S.D.N.Y. May 2, 2000) (denying Rule 11 motion without prejudice "to renewal at conclusion of litigation"); *Thorner v. Sony Comput. Entm't Am. Inc.*, 2010

WL 904797, at *2 (D.N.J. Mar. 9, 2010) (denying defendants' motion for sanctions as premature when it "came before any dispositive motion or final judgment in favor of . . . defendants").[6]

Here, six months have passed since the Court issued its Claim Construction Order. Precision has not filed a motion to dismiss on the pleadings or a motion for summary judgment. Instead, Precision, for the first time, asks this Court to make substantive findings on the merits with respect to Superior's literal infringement and infringement under the doctrine of equivalents in a motion for sanctions. Because there has not been any order on the merits, Precision's motion is undeniably premature and should accordingly be denied. *See, e.g.*, *Thorner*, 2010 WL 904797, at *2 (denying defendants' motion for sanctions as premature when it "came before any dispositive motion or final judgment in favor of . . . defendants").

The cases Precision cites to support its sanctions motion are all distinguishable based on one simple fact: they all either followed or were contemporaneous with dispositive motion orders or other orders on the merits. *See Coonts v. Potts*, 316 F.3d 745, 749 (8th Cir. 2003) (summary judgment); *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 243 F.R.D. 322, 330 (N.D. Iowa 2007) (order denying motion for preliminary injunction); *Miller v. Bittner*, 985 F.2d 935, 937 (8th Cir. 1993) (motion to dismiss); *Source Vagabond Sys. Ltd. v. Hydrapak, Inc.*, 753 1291, 1296 (Fed. Cir. 2014) (summary judgment); *View Eng'g, Inc. v. Robotic Vision Sys.*, 208 F.3d 981, 983 (Fed. Cir. 2000) (summary judgment); *Q-Pharma, Inc. v. Andrew Jergens Co.*, 360 F.3d 1295, 1298

---

[6] *See also Richmond v. Actavis Totowa, LLC*, No. 2:09-cv-00888, 2010 U.S. Dist. LEXIS 35437, at *11 (S.D. W. Va. Apr. 8, 2010) ("[M]otions for Rule 11 sanctions will not be accepted as suitable substitutions for summary judgment motions to be filed at the appropriate time in this MDL"); *Health Grades, Inc. v. MDX Med., Inc.*, Civil Action No. 11-cv-00520-RM-BNB, 2014 U.S. Dist. LEXIS 200340, at *5 (D. Colo. Jan. 2, 2014) ("I agree with Health Grades that, at a minimum, the Motion for Sanctions is premature. The Motion for Summary Judgment . . . which underlies the Motion for Sanctions largely is unresolved and, in some respects, has been withdrawn").

(Fed. Cir. 2004) (summary judgment); *Raylon, LLC v. Complus Data Innovations, Inc.*, 700 F.3d 1361, 1363 (Fed. Cir. 2012) (summary judgment); *Phonometrics, Inc. v. Econ. Inns of Am.*, 349 F.3d 1356, 1358-59 (Fed. Cir. 2003) (prior grants of summary judgment in other cases involving similar allegations); *Agarwal v. Morbarck, LLC*, 585 F. Supp. 3d 1026, 1027 (E.D. Mich. 2021) (stipulated entry of summary judgment). All of the remaining cases cited by Precision relate to sanctions under 35 U.S.C. § 285, governing the award of reasonable attorney fees to a prevailing party *after* the case has been resolved on the merits. (*See* D.I. 107 at 5, 15-17 (citing cases).) Thus, Precision has not cited a single case where a court made substantive findings about the disputed underlying merits of the case on a sanctions motion alone.

For this reason alone, Superior respectfully requests this Court deny Precision's motion as an improper use of Rule 11.

### B. Precision does not show Superior's infringement positions are objectively unreasonable—and that is Precision's burden.

As discussed above, a Rule 11 motion is not the proper vehicle to resolve—for the first time—the strength of parties' positions on the merits. Nonetheless, because Precision has raised substantive issues in its motion, Superior is compelled to provide the following brief response on the merits of its infringement case.

#### 1. Precision fails to show Superior's assertion of literal infringement is objectively unreasonable.

Superior has more than an objectively reasonable basis to assert literal infringement. First, as explained in Superior's correspondence leading up to the motion, Superior's position is that Precision's non-infringement arguments confuse the "wing" and "V-shaped wing" limitations found in all of the asserted claims with "the midpoint" limitation found only in claims 26 and 29-31 of the '145 patent. Ex. 3. This confusion persists in Precision's brief. (*See* D.I. 107 at 11-14.)

There are a number of reasons why Superior disagrees with Precision's importation of a limitation from claims 26 and 29-31 of the '145 patent into all the asserted claims (which do not have the same language). For example, importing "the midpoint" construction from claims in which that term is found into all others is contrary to black letter patent law that it is improper to import limitations from one claim with different language into another. *See CAE Screenplates, Inc. v. Heinrich Fiedler Gmbh & Co. Kg*, 224 F.3d 1308, 1317 (Fed. Cir. 2000) ("In the absence of any evidence to the contrary, [the court] must presume that the use of . . . different terms in the claims connotes different meanings.") As another example, the Court's Claim Construction Order does not expressly tie the "midpoint" construction to the construction of the generic terms "wing" or "V-shaped wing" as Precision does without explanation. In its Claim Construction Order, the Court construed the terms "wing" and "V-shaped wing" as found in "RE'145 claims 13, 19, 25-26, 29-31 and RE'600 claims 26 and 32." D.I. 82 at 13. By contrast, the Court's construction of "the midpoint" was made expressly in the context of claims 26, 29-31 of the '145 patent. *Id.* at 38 (. . . "as used in claims 26, and 29-31").[7]

Precision has not met its burden to show Superior's position that "the midpoint" construction from claims 26 and 29-31 of the '145 patent should not be read into all of the other asserted claims somehow manifests either intentional or reckless disregard of Superior's counsel's duties to the Court. Precision's motion should be denied.

> **a.     Precision fails to show Superior's assertion that the accused products literally meet the "wing" and "V-shaped wing" limitations in all of the asserted claims of the '145 and '600 patents is objectively unreasonable.**

---

[7] This issue of the proper interpretation of the Court's Claim Construction Order is precisely the kind of issue that will be the subject of the parties' summary judgment motions, and eventual order on the merits, applying the Court's constructions to the parties' proffered arguments.

As disclosed in Superior's infringement contentions, each of the accused products have "a singular wing pulley wing comprising a first wing portion and a second wing portion, where the first wing portion and the second wing portion extend toward and converge at a midpoint, forming a V-like shape":



(*See*, *e.g.*, D.I. 106-3 at 54). Superior's position is that the wing portions of the Herringbone wing pulley extend toward and converge at a midpoint, forming a V-like shape. Precision complains that it doesn't know how the wing portions can extend toward and converge at a midpoint, forming a V-like shape, but ignores entirely the expert infringement report served by Superior one month before Precision filed its motion. The report from Griswold explains how Precision's accused products meet the limitation based on numerous sources of evidence including Griswold's inspection of the products, testimony from Precision engineers, and Precision's own documents. (*See* Ex. 4 (Griswold Report) ¶¶ 128-30). Precision's failure to even mention the Griswold report epitomizes how Precision would like to resolve this case based on attorney argument alone.[8]

---

[8] To the extent Precision's position is that the Herringbone "wing" is not comprised of two distinct plates, Superior has explained in correspondence that Precision's argument is contrary to the Court's Claim Construction Order, which found that the claimed wing did not have to be comprised of a single metal plate or wing portions that attach or connect. (D.I. 82 at 23.) Again, the parties' disputes about the application of the Court's Claim Construction to reach any dispositive outcome should not be resolved in a Rule 11 motion.

In sum, Precision has not met its burden to show that Superior's literal infringement read for "wing" and "V-shaped wing" somehow manifests either intentional or reckless disregard of Superior's counsel's duties to the Court. Precision's motion should be denied.

> **b.    Precision fails to show Superior's assertion that the accused products literally meet the "the midpoint" limitation in claims 26 and 29-31 of the '145 patent is objectively baseless.**

Even if "the midpoint" construction is imported into all asserted claims, Superior would still have an objectively reasonable basis to assert that the accused products literally meet the "wing" and "V-shaped wing" limitations in all of the claims and "the midpoint" limitation found in claims 26 and 29-31 of the '145 patent.

As an initial matter, Precision's motion tries to paint Superior as pursuing literal-infringement theories that are directly contrary to the Court's Claim Construction Order. The problem is that Precision has instead set up straw men in the form of Superior's *doctrine of equivalents* infringement theories. (*See* D.I. 107 at 11-14.) This mischaracterization of Superior's doctrine-of-equivalents theories as literal infringement theories is yet another example of Precision's cavalier approach to this Rule 11 motion.

First, Precision focuses on an infringement theory whereby the wing portions are identified as extending towards two separate geometric points at the exact middle of the pulley:



Precision Br. at 13. This has never been a literal infringement theory of Superior's. In December 2021, Superior served contentions identifying this as a *doctrine-of-equivalents theory* in the event

the Court construed the claims to require that "the midpoint" be a single geometric point. Ex. 7 (Contentions) at 119-121 (explaining why "Precision would infringe under the doctrine of equivalents"); *see also* D.I. 106-3 (Proposed Amended Contentions) at 46, 49, 71, 75, 94, 99, 118, 121; Ex. 4 (Griswold Report) ¶¶ 44, 58, 61, 77. Thus, Precision's argument that this presents an objectively baseless literal infringement theory is wrong—this is not and has never been Superior's literal-infringement theory.

Second, Precision focuses on an infringement theory whereby the wing portions are identified as extending toward a single geometric point slightly offset from the exact middle of the pulley:

 

Precision Br. at 12. This theory again is solely being advanced as a doctrine-of-equivalents theory if the construed claims are understood to require that the first wing portion and the second wing portion extend towards a geometric point, line, or plane that is in the exact middle of the length of the wing pulley. *See* D.I. 106-3 (Proposed Amended Contentions) at 13 (disclosing Doctrine of Equivalents Theory I); *see also* Ex. 4 (Griswold Report) ¶¶ 58. Thus, yet again, Precision's assertion that this argument presents an objectively baseless literal infringement theory is wrong— Precision was aware four months before filing this motion that Superior was only pursuing this argument under a doctrine-of-equivalents theory.

Setting aside Precision's strawman arguments, Superior has a more than an objectively reasonable basis to assert that Precision literally meets "the midpoint" limitation. The Court

construed "the midpoint" as "a point on each wing halfway across an imaginary line extending between the outer ends of the wing and forward of that line in the direction of the pulley's rotation." D.I. 82 at 39. The Court's construction thus defined a midpoint on each wing using two references: (1) a location: halfway across an imaginary line extending between outer ends of the wing; and (2) a direction: forward of that line in the direction of the pulley's rotation. In the following manner, Griswold explained in his report how the wing portions begin at the respective ends of the wing pulley and extend towards a point on each wing halfway across an imaginary line extending between the outer ends of the wing and forward of that line in the direction of the pulley's rotation:



Ex. 4 (Griswold Report) ¶ 230-31 (annotations added); *see also* D.I. 106-3 (Proposed Amended Contentions) at 42. Again, Precision ignored Griswold's report as well as any supporting testimony and documents, instead relying entirely on attorney argument.

While Precision may not agree with these literal infringement theories, they are not a basis for seeking Rule 11 sanctions and Precision's motion should accordingly be denied.

> **2.      Precision fails to show that Superior's doctrine of equivalent theories are objectively unreasonable.**

Superior has more than an objectively reasonable basis to maintain a doctrine-of-equivalents theory. Precision's motion makes no mention of the specific claims or limitations, or indeed the doctrine of equivalents theories it asserts are relevant to or foreclosed by its "recapture"

arguments under the doctrine of equivalents. *See generally* Precision Br. at 14-16. Having

identified none, Superior assumes that Precision is arguing that all of Superior's doctrine-of-

equivalents theories for "wing," "V-shaped wing," and "the midpoint" would result in recapture

of material Superior allegedly disclaimed in prosecution.

As Superior explained to Precision's counsel in correspondence before this motion, the

Court's finding of prosecution history disclaimer does not foreclose all infringement under the

doctrine of equivalents. Ex. 3 at 3-4. "[M]erely because certain prosecution history is used to define

the claims more narrowly, there still may be — even in light of that same prosecution history —

an appropriate range of equivalents under the doctrine of equivalents." *EI du Pont de Nemours &*

*Co. v. Phillips Petro. Co.*, 849 F. 2d 1430, 1439 (Fed. Cir. 1988). "The applicability of prosecution

history estoppel does not completely bar the benefit of the doctrine of equivalents from all

litigation related to the amended claim." *Intervet Inc. v. Merial Ltd.*, 617 F.3d 1282, 1291 (Fed.

Cir. 2010) (addressing prosecution history estoppel where a narrowing amendment has been

made). That is, "even in the case of an unequivocal disavowal of claim scope, the court must

construe the claim congruent with the scope of the surrender." *Cordis Corp. v. Medtronic Ave,*

*Inc.*, 511 F.3d 1157, 1177 (Fed. Cir. 2008).

Precision describes Superior's theory as "a classic case of a patentee trying to recapture

subject matter with the doctrine of equivalents that it unambiguously disclaimed during

prosecution," yet tellingly, Precision never even mentions let alone discusses the prior art that

Superior overcame during prosecution of the '145 patent. In Kanaris, as the inventors explained,

"the abutments . . . do not extend to a midpoint according to claims 26-29, but rather the abutments

stop short of the midpoint to define an intermediate area of the drum that is free of abutments."

(Ex. 6 ('145 patent FH) at SUPERIOR0000701) (citing Figure 2 and Col. 4, lines 31-34):



By contrast, the accused Precision Herringbone wing products have wing portions that *do not* stop short of the midpoint and *do not* create an intermediate area of the drum that is free of abutments:[9]



To the extent Precision contends that Superior is trying to recapture claim scope because the wing portions of the Precision Herringbone do not connect or attach at the midpoint, the Court

___

[9] The cases Precision cites are either distinguishable or irrelevant. In many of the cases cited, the courts found that the patentee had disclaimed the exact structure it was now seeking to read the claims on. *See, e.g.*, *Amgen Inc. v. Coherus BioSciences Inc.*, 931 F.3d 1154, 1160 (Fed. Cir. 2019) ("Amgen clearly and unmistakably surrendered salt combinations other than the particular combinations recited in the claims" by arguing that "nor [are] the *particular* combinations of salts recited in the pending claims taught nor suggested in [the prior art]." (emphasis in original)); *SciMed Life Sys., Inc. v. Advanced Cardiovascular Sys., Inc.*, 242 F.3d 1337, 1346 (Fed. Cir. 2001) ("Having specifically identified, criticized, and disclaimed the dual lumen configuration, the patentee cannot now invoke the doctrine of equivalents to 'embrace a structure that was specifically excluded from the claims."). In *Traxcell*, a decision in a prior case expressly barred the very same theory the plaintiff was advancing in the present case. *Traxcell Techs., LLC v. AT&T Corp.*, No. 17-cv-00718-RWS-RSP, 2022 WL 949951, *2 (E.D. Tex. Mar. 29, 2022). And the *CliniComp*, *Straight Path*, and *Princeton* cases don't address recapture or the doctrine of equivalents at all. *See generally CliniComp Int'l., Inc. v. Cerner Corp.*, 17-cv-02479-GPC (DEB), 2023 WL 1767008 (S.D. Cal. Feb. 3, 2023); *Straight Path IP Group, Inc. v. Cisco Sys., Inc.*, 411 F. Supp. 3d 1026 (N.D. Cal. 2019); *Princeton Digital Image Corp. v. Ubisoft Entertainment SA*, No. 13-335-LPS-CJB, 2021 WL 4033220 (D. Del. Sept. 3, 2021).

already found that this was not part of any alleged disclaimer. *See* D.I. 82 at 22-23 ("Superior, however, did not differentiate its patent from the '754 Patent by indicating the wings attach or connect"). "[T]he court must construe the claim congruent with the scope of the surrender." *See Cordis Corp*, 511 F.3d at 1177. What Precision asks for goes far beyond that. This is not a "classic case of recapture," and Superior has a Rule 11 basis for asserting infringement under the doctrine of equivalents.

Precision has failed to meet its burden to show that Superior's infringement positions are objectively unreasonable. Therefore, even considering the merits, which Superior contends is improper, Precision's motion should be denied.

## V.   <u>CONCLUSION</u>

For the forgoing reasons, Superior respectfully requests that the Court deny Precision's motion for Rule 11 Sanctions.

Dated: June 1, 2023

Respectfully submitted,

By: /s/ Cyrus A. Morton
Cyrus A. Morton (admitted pro hac vice)
Benjamen C. Linden (admitted pro hac vice)
François O. Ecclesiaste (admitted pro hac vice)
Travis K. Waller (admitted pro hac vice)
Navin Ramalingam (admitted pro hac vice)
**ROBINS KAPLAN LLP**
2800 LaSalle Plaza
800 LaSalle Avenue
Minneapolis, MN 55402
Telephone: 612-349-8500
Facsimile: 612-339-4181
Email: cmorton@robinskaplan.com
Email: blinden@robinskaplan.com
Email: fecclesiaste@robinskaplan.com
Email: twaller@robinskaplan.com
Email: nramalingam@robinskaplan.com

By: /s/ Wesley T. Graham
Wesley T. Graham AT0011184
**DUNCAN GREEN, P.C.**
400 Locust Street, Suite 380
Des Moines, IA 50309
Telephone: (515) 288-6440
Facsimile: (515) 288-6448
wtgraham@duncangreenlaw.com

***Attorneys for Plaintiff Superior Industries, Inc.***

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that a copy of the foregoing pleading has been electronically filed with the Clerk of Court on this 1st day of June 2023, using the CM/ECF Filing System, which shall send electronic notification of such filing to all counsel of record.


Dated: June 1, 2023      Respectfully submitted,

           */s/ Cyrus A. Morton*
           Cyrus A. Morton